51 Cal.App.3d 80 (1975)
123 Cal. Rptr. 825
Estate of LUCINDA CROSS, Deceased.
UNITED CALIFORNIA BANK, as Executor, etc. et al., Petitioner and Appellants,
v.
RUBY JOHNSON et al., Objectors and Respondents.
Docket No. 15093.
Court of Appeals of California, Third District.
August 29, 1975.
*82 COUNSEL
Jane Skanderup and Richard C. Beesley for Petitioner and Appellants.
Harry A. Hammond and Breyer & Aiello for Objectors and Respondents.
OPINION
FRIEDMAN, Acting P.J.
Beneficiaries of the estate of Lucinda Cross filed objections to the final account of United California Bank, executor, *83 complaining that the bank had paid commissions to two real estate brokers without verified claims having been filed and without court approval. The probate court held an evidentiary hearing to determine whether Probate Code section 929 permitted allowance of these expenditures. That statute permits allowance of debts paid to creditors who have not filed claims if "it shall be proven that such debts were justly due, were paid in good faith...."[1] Following the hearing, the court expressed "grave doubts" that the commissions had been justly due or paid in good faith. The court concluded that the payments did not satisfy section 929 and ordered the executor surcharged for the expenditures plus interest. United California Bank appeals.
In expressing "grave doubts" that the brokers' commissions had been justly due and paid in good faith, the probate court impliedly placed upon the executor the burden of proving these elements. Section 929 declares that these elements "shall be proven." The statute provides an exception to the general principle prohibiting estate representatives from paying decedents' debts which have not been presented in conformity with the statutory claim procedure. (Nathanson v. Superior Court, 12 Cal.3d 355, 362, 365 [115 Cal. Rptr. 783, 525 P.2d 687].) (1) To place the burden of persuasion upon the representative who has paid an unfiled claim without prior court approval is quite consistent with the statutory objective. (See Estate of Hilde, 101 Cal. App.2d 41, 43 [224 P.2d 765].)
At the outset we look to the scope of appellate review. (2) Section 929 vests the probate court with broad discretion to decide what items of expenditure are allowable charges; its discretion will not be disturbed on appeal except when abused. (Estate of Hartnett, 155 Cal. App.2d 277, 279 [318 P.2d 79].) So described, the scope of review is approximately that prevailing in civil appeals generally  the facts will be viewed in the light most favorable to the prevailing party and the findings will not be disturbed if supported by substantial evidence. (Nestle v. City of Santa Monica, 6 Cal.3d 920, 925-926 [101 Cal. Rptr. 568, 496 P.2d 480]; Crawford v. Southern Pacific Co., 3 Cal.2d 427, 429 [45 P.2d 183].)
Mrs. Cross, the decedent, owned ranching properties in Siskiyou County. She had five children, one of whom, Vernon, was her business *84 associate and ranch manager. As a result of their own investigation and of discussions with Nicholas Koluncich, a real estate broker, Mrs. Cross and Vernon decided to sell approximately 3,000 acres of Mrs. Cross' range land at $30 per acre. On April 12, 1967, Mrs. Cross signed and delivered to Koluncich a document designated as a real estate listing agreement covering a described tract totaling 3,033 acres, specifying a sale price of $91,000 and providing a broker's commission of $9,000 or 10 percent of the gross selling price, "whichever is greater," the seller to net (after costs of sale) $82,000.
Within a few weeks Carolyn Cooke, a real estate broker cooperating with Koluncich, produced buyers who were willing to pay $135,000 for the land, with a down payment of $30,000. On May 6, 1967, the buyers and Lucinda Cross signed a deposit receipt outlining the terms of a purchase and sale agreement. The deposit receipt's printed provision for payment of a broker's commission was left blank.
On May 8, 1967 (the same day she signed escrow instructions), Mrs. Cross and Koluncich signed a document substantially increasing the brokers' commissions. The May 8 document declared that it would "serve as the legal authorization for disbursement of funds" from the sale. According to its terms, Koluncich would receive a partial commission of $9,000 and Carolyn Cooke a partial commission of $3,000 out of the buyers' down payment of $30,000. From the $105,000 remainder of the purchase price, payable over 15 years, Koluncich would receive additional commissions of $12,890 plus 6 percent annual interest, and Carolyn Cooke additional commissions of $18,956 plus 6 percent interest. These later commissions were to be paid by the title company as future installments of the purchase price were received. The May 8 document declared: "The signatures of broker Koluncich and seller Cross shall make this document binding and shall be a part thereof of exclusive listing between Broker Koluncich & seller Cross."
The next day, May 9, 1967, Mrs. Cross and Koluncich signed a third document, apparently with reference to the fact that the buyers would be paying annual installments to United California Bank as collection agent. This document confirmed the division of future installments between Mrs. Cross, the seller, and Koluncich and Carolyn Cooke, the two brokers.
On June 9, 1967, Lucinda Cross died. In August, after its appointment as executor, United California Bank presented to the probate court the *85 signed deposit receipt covering sale of the 3,033-acre tract and requested the court to authorize the executor to complete the terms of the contract by conveying the land to the buyers. The court granted the authorization. (See Prob. Code, §§ 850-851.) At this point, too, it is worthy of note that the provision in the deposit receipt for a broker's commission had been left blank. The court order made no reference to brokers' commissions.
Neither Koluncich nor Carolyn Cooke filed a claim against the Cross estate. Ultimately United California Bank, as executor, filed its final account and petitioned for settlement and final distribution. Attached to the account were schedules showing that the executor had paid commissions to both brokers at the rates fixed by the documents of May 8 and May 9, 1967. The heirs other than Vernon filed objections to the account. Carolyn Cooke, claiming to be a creditor of the estate, sought to intervene. The court rejected the intervention attempt. Carolyn Cooke has attempted to join in United California Bank's appeal.
According to the evidence, usual real estate broker commissions in the locality were 5 percent of the sale price of improved property and 10 percent in the case of unimproved property (such as the range land involved here). Mr. Stegall, a trust officer of United California Bank in charge of the Cross estate during the first part of its administration, acknowledged that an executor did not ordinarily pay creditors who had not filed claims. He recognized that, unlike the usual case, the deposit receipt did not fix the brokers' commissions. Despite the absence of such a provision, he believed that court approval of the conveyance authorized the bank to pay brokers' commissions at the rate fixed by the May 8 and May 9 documents. He was aware of the prevailing 10 percent commission rate and recognized that in this case the commissions of the two brokers would exceed 34 percent of the sale price. He did not discuss the estate's payment of these real estate commissions with the heirs.
Mr. Brockwehl succeeded Mr. Stegall as trust officer in charge of the Cross estate. Mr. Brockwehl assumed that the probate court had orally approved the commissions payable to the two brokers. (In fact, the executor offered no evidence that the court had ever been informed of the agreements between decedent and Koluncich.) In the summer of 1971 the Cross estate heirs and their attorney met with Mr. Brockwehl and the bank's attorney regarding payment of the brokers' commissions. Over the heirs' objections, the bank made two more payments to the brokers. Mr. Brockwehl explained that the commission payments were continued because he believed that the court had approved the land conveyance and the brokers' commissions as a single transaction.
*86 The bank did not present either broker, Mr. Koluncich or Mrs. Cooke, as a witness.
The reported decisions do not analyze the statutory demand for proof of debts which were justly due and paid in good faith. The two phrases interact to some extent  payment of a just debt generally denotes good faith, and good faith implies payment of a debt justly or really owed. The phrase justly due denotes that which is owing (Crocker-Woolworth Nat. Bank v. Carle, 133 Cal. 409, 411 [65 P. 951]) but imports the additional notion of an obligation which is unquestionably or incontestably owing. A parallel notion emanates from the good faith criterion. Beyond honesty of purpose and freedom from fraud, good faith connotes faithfulness to duty or obligation. (People v. Nunn, 46 Cal.2d 460, 468 [296 P.2d 813]; Guntert v. City of Stockton, 43 Cal. App.3d 203, 211 [117 Cal. Rptr. 601].) (3) An executor is a fiduciary and, in a general sense, a trustee; he is obliged to protect the interests of the heirs. (Larrabee v. Tracy, 21 Cal.2d 645, 650 [134 P.2d 265]; Estate of Boggs, 19 Cal.2d 324, 333 [121 P.2d 678]; County of Los Angeles v. Morrison, 15 Cal.2d 368, 371 [101 P.2d 470, 129 A.L.R. 443]; Estate of Baird, 135 Cal. App.2d 343, 347 [287 P.2d 372].) (4) Correlative to his commitment to fulfill the decedent's executory contracts is his power to challenge such contracts on such grounds as lack of consideration or fraud. (See Estate of Burke, 198 Cal. 163, 167 [244 P. 340, 44 A.L.R. 1341]; 33 C.J.S., Executors and Administrators, § 189, pp. 1169, 1170; 31 Am.Jur.2d, Executors and Administrators, § 180, p. 102.) (5) When the justice or legality of a claim is dubious, an executor may assuage his perplexity by applying to the probate court for instructions. (Prob. Code, § 588; Estate of Burke, supra, 198 Cal. at p. 169.)
(6) In this case the liability of Lucinda Cross and her estate to pay the enlarged real estate brokers' commissions was questionable. The grossly inflated commission figure silently but eloquently aroused suspicion. In an initial writing Mrs. Cross had bound herself to a 10 percent commission. After the brokers produced a buyer at a higher price than originally expected, Mrs. Cross signed papers granting the brokers a commission of approximately one-third the price plus interest on the deferred installments of commission. Several possible defenses would have occurred to a reasonably vigorous and sensitive executor. One was lack of consideration, i.e., Mrs. Cross' promise to pay the brokers more than she owed was not supported by a new consideration. (See Civ. Code, § 1605; 1 Witkin, Summary of Cal. Law, Contracts, § 164.) Another arose from the possibility that Koluncich, having assumed *87 a fiduciary position as broker, had gained an unconscionable advantage over his client. (See Batson v. Strehlow, 68 Cal.2d 662, 674-676 [68 Cal. Rptr. 589, 441 P.2d 101]; Smith v. Zak, 20 Cal. App.3d 785, 792-793 [98 Cal. Rptr. 242].) Another possibility  fully unexplored and altogether hypothetical in the present state of the record  was that Koluncich had induced the inflated commission agreement by misrepresentation or concealment.
The executor ignored these possibilities, even to the point of paying brokers' commissions without first seeking instructions from the probate court. By failing to raise or even explore possible objections to the inflated commissions, the executor failed in its obligation to protect the estate's assets and the heirs' interests. The bank officials' professed belief that judicial approval of the real estate conveyance included approval of the brokers' commissions was an unjustified assumption, belied by the papers in the bank's files. There was substantial evidentiary support for the probate court's refusal to find that the brokers' commissions had been justly due or paid in good faith.
We dispose of several additional contentions raised only at oral argument. The bank argues that it occupied concurrent positions as executor and as collection agent for the land buyers' payments only by happenstance; that it would not be vulnerable to surcharge had a third party been collection agent. The argument fails. Had the payments been deposited with a third party, the executor would have been under a duty to investigate and question the lawfulness of the brokers' commissions. The bank, moreover, is a single entity; it may not insulate its collection department from its own obligations as executor. As the court pointed out in Black v. Shearson, Hammill & Co., 266 Cal. App.2d 362, 368 [72 Cal. Rptr. 157]: "[W]e have been given no sufficient reason for permitting a person to avoid one fiduciary obligation by accepting another which conflicts with it."
Another claim asserted at oral argument is estoppel of the objecting heirs. There is no evidence or finding that the heirs ever approved or misled the bank into a belief that they approved the enlarged brokers' commissions. To the contrary, the evidence shows that the heirs were at first unaware of the amounts being paid the brokers; that they then objected; that the bank made several payments after it became aware of these objections.
*88 The purported appeal of Carolyn Cooke is dismissed. A creditor who has not filed a timely claim is barred from proceeding against the estate. (Prob. Code, § 707; Estate of Hincheon, 159 Cal. 755, 759-760 [166 P. 47].) Code of Civil Procedure section 902 applies to probate matters by force of Probate Code section 1233; it permits appeal by a party who is aggrieved. Although adversely affected by an appealable order, a person may not appeal from it unless he is a party to the proceeding. (Estate of Partridge, 261 Cal. App.2d 58, 60-61 [67 Cal. Rptr. 433]; see also County of Alameda v. Carleson, 5 Cal.3d 730, 736 [97 Cal. Rptr. 385, 488 P.2d 953].)
The order is affirmed.
Regan, J., and Evans, J., concurred.
NOTES
[1] The full text of Probate Code section 929 is: "If it appears that debts of the decedent have been paid without verified claims having been filed or presented and allowed and approved, and it shall be proven that such debts were justly due, were paid in good faith, that the amount paid was the true amount of such indebtedness over and above all payments or set-offs, and that the estate is solvent, the court, in settling the account, shall allow the sums so paid."