[No. B010756. Second Dist., Div. Seven. Sept. 5, 1986.]

WENDELL T. LOWRY et al., Plaintiffs and Appellants, v. HENRY MAYO NEWHALL MEMORIAL HOSPITAL et al., Defendants and Respondents.

**COUNSEL**

Klein, Wegis & Duggan and Ralph B. Wegis for Plaintiffs and Appellants.

Hagenbaugh & Murphy and Mikel A. Alpert for Defendant and Respondent.

**OPINION**

**THOMPSON, J.**—Plaintiffs appeal from a summary judgment entered in favor of defendant, Geraldine Dyer, M.D., on plaintiffs' first amended complaint for medical malpractice and wrongful death arising from the treatment and death of decedent, Jewel Lowry. The trial court granted summary judgment to defendant on the basis of the immunity afforded to members of hospital rescue teams pursuant to Health and Safety Code section 1317.[1] Plaintiffs contend on appeal that summary judgment was improperly granted because (1) section 1317 does not apply to defendant, the designated head of the hospital's rescue team, in that section 1317 applies only to volunteers or Good Samaritans, and (2) a triable issue of material fact exists as to whether defendant acted in "good faith" as required by section 1317.

We conclude that the immunity afforded under section 1317 applies to designated, nonvolunteer, non-"Good Samaritan" members of a hospital's

---

[1]Unless indicated, all section references are to the Health and Safety Code.

Section 1317 provides in pertinent part:

"No act or omission of any rescue team established by any health facility licensed under this chapter, or operated by the federal or state government, a county, or by the Regents of the University of California, done or omitted while attempting to resuscitate any person who is in immediate danger of loss of life shall impose any liability upon the health facility, the officers, members of the staff, nurses or employees of the health facility, including, but not limited to the members of the rescue team, or upon the federal or state government or a county, if good faith is exercised.

"'Rescue team,' as used in this section, means a special group of physicians and surgeons, nurses, and employees of a health facility who have been trained in cardiopulmonary resuscitation and have been designated by the health facility to attempt, in cases of emergency, to resuscitate persons who are in immediate danger of loss of life."

emergency resuscitation team, such as defendant. We further find that defendant has provided substantial and unrefuted evidence of her good faith in attempting to resuscitate decedent. There being no triable issues of material fact, summary judgment was properly granted as a matter of law. Affirmed.

## FACTUAL AND PROCEDURAL BACKGROUND

The following facts are undisputed. Decedent was admitted to the Henry Mayo Newhall Memorial Hospital, a duly licensed health facility, on February 1, 1983, as a result of injuries sustained in an automobile accident. While hospitalized, she sustained a cardiac arrest on February 21, 1983, at 1:59 p.m. An emergency Code Blue alert was sounded, and defendant, the designated head of the hospital's Code Blue team, immediately responded. Between 1:59 p.m. and 2:35 p.m., defendant administered advanced cardiac life support to decedent, and directed the members of the Code Blue team. The only connection between defendant and decedent arose from the Code Blue. Decedent was pronounced dead at 2:35 p.m.

Plaintiffs filed, on July 11, 1984, their first amended complaint for medical malpractice and wrongful death against the hospital, defendant, and various other medical personnel who treated decedent's automobile accident injuries. After filing an answer, defendant Dyer moved for summary judgment on the basis of the immunity under section 1317.

In support of her motion, defendant filed a declaration stating that she was properly trained in advanced cardiac life support.[2] She stated that she was within 300 feet or less of decedent's room when the Code was called, that she immediately responded and noted that decedent's eyes were fixed and dilated. Although she believed decedent was probably beyond saving, resuscitation procedures were undertaken for about 35 minutes.

In opposition, plaintiffs argued that defendant had failed to establish the absence of a triable issue of material fact as to defendant's good faith. Plaintiffs charged that defendant acted in bad faith by arbitrarily deviating from the American Heart Association guidelines for advanced cardiac life support by administering the drug Atropine rather than Epinephrine. Plaintiffs argued that had Epinephrine been administered instead of Atropine, decedent's chances of survival would have dramatically increased. Plaintiffs,

---

[2]The record also establishes that defendant is a certified instructor in advanced cardiac life support.

however, failed to support these claims by either declaration or expert testimony.[3] Plaintiffs also contended that section 1317 applied only to volunteer doctors who were not designated members of the hospital's Code Blue team.

In reply, defendant directed the court to deposition testimony excerpts in which she explained that the American Heart Association guidelines are mere guidelines that may be altered by the physician. She explained that she administered Atropine because it is one of the drugs used as a first line to start the heart after the monitor reveals that there is no cardiac activity. This evidence was unrefuted.

The trial court granted summary judgment to defendant and this appeal followed.

### Section 1317 Is Applicable to Designated Members of a Rescue Team

Plaintiffs contend that section 1317 is part of "a package of legislation known as the 'Good Samaritan Legislation'" intended to protect "volunteer hospital rescue teams." They argue that the legislative intent of section 1317 is to "encourage teams of physicians to voluntarily come to the aid of hospital patients when those patients were in danger of imminent death." They conclude that defendant, as designated head of the hospital's Code Blue team, was not intended to be covered by section 1317 because she was under a legal duty to respond to the Code Blue.

Section 1317's legislative history demonstrates, however, that it was not part of a package of legislation known as the "Good Samaritan Legislation"[4] aimed at protecting volunteer rescuers. Section 1317 unambiguously states that immunity is extended to all *designated* members of a hospital rescue

---

[3]Plaintiffs also allege that because the cardiac arrest was the result of the administration of a certain drug, Epinephrine should have been administered. This, however, is not supported by the record.

[4]Former Business and Professions Code section 2144 (Stats. 1937, ch. 414, p. 1377, amended by Stats. 1959, ch. 1507, § 1, p. 3796) stated in pertinent part: "No person licensed under this chapter, who in good faith renders emergency care at the scene of the emergency, shall be liable for any civil damages as a result of any acts or omissions by such person in rendering the emergency care."

Current Business and Professions Code section 2395 (Stats. 1980, ch. 1313, § 2, p. 4492) states in pertinent part: "No licensee, who in good faith renders emergency care at the scene of an emergency, shall be liable for any civil damages as a result of any acts or omissions by such person in rendering the emergency care."

team. The section defines "rescue team" as a "special group of physicians and surgeons, nurses, and employees of a health facility who have been trained in cardiopulmonary resuscitation and *have been designated by the health facility* to attempt, in cases of emergency, to resuscitate persons who are in immediate danger of loss of life." (§ 1317, italics added.)

"It is a settled principle in California law that '[w]hen statutory language is thus clear and unambiguous there is no need for construction, and courts should not indulge in it.' [Citation.]" (*In re Waters of Long Valley Creek Stream System* (1979) 25 Cal.3d 339, 348 [158 Cal.Rptr. 350, 599 P.2d 656].) "Although a court may properly rely on extrinsic aids, it should first turn to the words of the statute to determine the intent of the Legislature. [Citations.] 'If the words of the statute are clear, the court should not add to or alter them to accomplish a purpose that does not appear on the face of the statute or from its legislative history.'" (*California Teachers Assn.* v. *San Diego Community College Dist.* (1981) 28 Cal.3d 692, 698 [170 Cal.Rptr. 817, 621 P.2d 856].) The above language of section 1317 clearly discloses that the Legislature intended to grant the designated members of a hospital emergency team immunity pursuant to the terms of the statute.

The sole authority cited by plaintiffs in support of their novel contrary interpretation of section 1317 (*Colby* v. *Schwartz* (1978) 78 Cal.App.3d 885 [144 Cal.Rptr. 624]) is inapposite because *Colby* concerns former Business and Professions Code section 2144, rather than section 1317. Former Business and Professions Code section 2144 has been judicially construed as a "Good Samaritan statute," which extends immunity only to "physicians who, by chance and on an irregular basis, come upon or are called to render emergency medical care" such as in the case of roadside accidents. (*Id.*, at p. 892.) According to *Colby*, the statute's protection did not extend to the defendant members of a hospital's emergency call surgical panel who conducted exploratory surgery on an automobile accident victim. Former Business and Profession Code section 2144's immunity is justifiable when a doctor voluntarily responds by chance to an emergency situation and is confronted with medical needs outside his or her expertise. (*Ibid.*) But in *Colby*, defendants were practicing within their area of expertise and with benefit of full hospital facilities, and thus were held fully accountable to the level of skill and training required under such circumstances. (*Ibid.*)

Plaintiffs' analogy between Health and Safety Code section 1317 and former Business and Professions Code section 2144 fails upon examination of the legislative intent in enacting the original predecessor statute to section

1317 (former § 1426, Stats. 1969, ch. 573, § 1, p. 1202).[5] The legislative history of former section 1426 (Senate Bill 709) indicates an intent to extend immunity to designated members of rescue teams. According to the legislative analysis prepared by the Senate Committee on Public Health and Safety, Senate Bill 709's purpose was to resolve the "[c]ontroversy and doubt [concerning] *the legal status* of such emergency teams. . . . [Sen. Bill No.] 709 . . . would *insulate from liability* any licensed hospital, its officers, staff, nurses and employees (including the members of the rescue team), for the *acts or omissions to act* of any resuscitation team established by it rendered during the revival of any person from death or unconsciousness, so long as *good faith* was exercised." And according to the legislative analysis of Senate Bill 709 prepared by the Assembly Committee on Health and Welfare, "rescue team" means "a special group of physicians, nurses and employees of a hospital who have been trained in cardiopulmonary resuscitation and have been designated by the hospital to attempt to resuscitate persons in immediate danger of loss of life." Also, a letter by Mr. Grunsky, the author of Senate Bill 709, urged the governor to sign the bill, stating that "[r]escue team is defined to mean a special group of physicians, nurses and employees of a hospital who have been trained in cardiopulmonary resuscitation and have been designated by the hospital to attempt to resuscitate persons in immediate danger of loss of life."

Significantly, the Legislature, in recodifying former section 1426 in 1972, incorporated the above definition of "rescue team" by adding the following: "'Rescue team,' as used in this section, means a special group of physicians and surgeons, nurses, and employees of a hospital who have been trained in cardiopulmonary resuscitation and have been designated by the hospital to attempt, in cases of emergency, to resuscitate persons who are in immediate danger of loss of life." (Former § 1344, Stats. 1972, ch. 1148, § 3, pp. 2235-2236.) Current section 1317 maintains this definition of "rescue team."

We conclude that abundant evidence exists to conclude that the Legislature, when it enacted section 1317's original version as former section 1426, intended to provide immunity to designated, rather than voluntary,

---

[5]Former section 1426 provided: "No act or omission of any rescue team established by any hospital licensed under this chapter, or operated by the federal or state government, a county, or by the Regents of the University of California, done or omitted while attempting to resuscitate any person who is in immediate danger of loss of life shall impose any liability upon the hospital, the officers, members of the staff, nurses, or employees of the hospital, including, but not limited to the members of the rescue team, or upon the federal or state government or a county, if good faith is exercised."

members of emergency rescue teams.[6] Accordingly, we hold that the protection of section 1317 extends to defendant as a designated member of a Code Blue team.

## SUMMARY JUDGMENT WAS PROPERLY GRANTED

■  A motion for summary judgment may be granted only if the moving party's affidavits would be sufficient to sustain a judgment in his favor and the opposing party's affidavits fail to raise a triable issue of fact. (Code Civ. Proc., § 437c; *Lipson* v. *Superior Court* (1982) 31 Cal.3d 362, 374 [182 Cal.Rptr. 629, 644 P.2d 822].) "The moving party bears the burden of furnishing supporting documents that establish that the claims of the adverse party are entirely without merit on any legal theory." (*Ibid.*) "The movant's affidavits must state facts sufficient to establish each element necessary to sustain a judgment in his favor. Unless they do, summary judgment should be denied, even though the opposing party files no affidavits whatsoever. [Citations.]" (*Baldwin* v. *State of California* (1972) 6 Cal.3d 424, 439 [99 Cal.Rptr. 145, 491 P.2d 1121].) Every reasonable doubt must be resolved in favor of the complaint. (*Cox* v. *State of California* (1970) 3 Cal.App.3d 301, 309-310 [82 Cal.Rptr. 896].)

■  As stated above, plaintiffs argue that defendant has failed to establish the absence of a triable issue of material fact as to defendant's good faith. Plaintiffs charge that defendant acted in bad faith by arbitrarily deviating from the American Heart Association guidelines for advanced cardiac life support by administering the drug Atropine rather than Epinephrine.

■  We must first determine the meaning of the term "good faith." "In engaging in statutory interpretation we are to accord words their usual, ordinary, and common sense meaning based on the language the Legislature used and the evident purpose for which the statute was adopted. [Citations.]" (*In re Rojas* (1979) 23 Cal.3d 152, 155 [151 Cal.Rptr. 649, 588 P.2d 789].)

---

[6]While we are directed by plaintiffs to an article urging the reconsideration of section 1317 because it defies the rationale underlying Good Samaritan laws, such action is for the Legislature and not the courts. (See Comment, *Good Samaritans and Hospital Emergencies* (1981) 54 So.Cal.L.Rev. 417.) The author contends that the public policy arguments advanced to justify section 1317—the hospital's need to obtain a sufficient number of Code Blue team members and to avoid delays in response to emergencies—are erroneous because hospitals typically assign staff to the teams and potential civil liability would discourage delays. The author concludes that section 1317 "constitutes a total obstruction of the rights of the hospital patient . . . . [because] [e]ven if the physician does not remotely qualify as a 'medical volunteer,' he is still provided with immunity from civil liability." (*Id.*, at p. 434.)

" " "The phrase 'good faith' in common usage has a well-defined and generally understood meaning, being ordinarily used to describe that state of mind denoting honesty of purpose, freedom from intention to defraud, and, generally speaking, means being faithful to one's duty or obligation. [Citations.]" " " (*Efron* v. *Kalmanovitz* (1967) 249 Cal.App.2d 187, 192 [57 Cal.Rptr. 248]; see *Estate of Cross* (1975) 51 Cal.App.3d 80, 86 [123 Cal.Rptr. 825].)

■ The sole question is whether defendant has demonstrated the absence of a triable issue of fact as to whether she acted with a state of mind possessed of honesty of purpose and faithfulness to her duty. We find that defendant, as the moving party, has met this burden of proof by her declaration testimony that she continued resuscitation efforts for thirty minutes after forming the opinion that decedent was beyond saving, and by her unrefuted deposition testimony that American Heart Association guidelines may be altered by the physician and that she administered Atropine because it is one of the drugs used as a first line to start the heart after the monitor reveals that there is no cardiac activity.

Plaintiffs' argument that Epinephrine would have dramatically increased decedent's chances of survival is unsupported by expert testimony and thus fails to rebut defendant's evidence of her good faith.[7]

There being no triable issues of material fact, and section 1317 being applicable to defendant, summary judgment was properly granted as a matter of law. The judgment is affirmed.

Lillie, P. J., and Johnson, J., concurred.

---

[7]Plaintiff's counsel, at oral argument, contended that a triable issue of fact exists concerning defendant's good faith, because any deviation from the American Heart Association guidelines constituted gross negligence, which demonstrates a lack of good faith. However, there is no evidence to rebut defendant's testimony of her good faith; the record fails to establish a triable issue of fact as to whether the administration of Atropine was grossly negligent or reckless. While it may be found in the proper case that gross negligence or recklessness constitutes a lack of good faith under section 1317, this issue has not been adequately raised herein due to the lack of evidence in the record to create a triable issue of fact.