[No. B139532. Second Dist., Div. One. June 29, 2000.]

LINCOLN PULLIN, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
THE VONS COMPANIES, INC., Real Party in Interest.

**COUNSEL**

Ivie, McNeill & Wyatt, Rickey Ivie and Kendall James for Petitioner.

No appearance for Respondent.

Robinson, Di Lando & Whitaker, Michael A. Di Lando, Farzad Tabatabai and Cynthia Goodman for Real Party in Interest.

**OPINION**

**VOGEL (Miriam A.), J.**—We publish this opinion to confirm that, as the plaintiff in this case claims, there is nothing in the Civil Discovery Act (Code Civ. Proc., § 2016 et seq.) to prevent a party from conducting a unilateral investigation without resort to any statutory discovery device, provided only that the investigation is lawful.[1] We issue a peremptory writ as prayed.

## FACTS

On a rainy day in February 1998, Lincoln Pullin slipped and fell at a Vons Market in Inglewood. In January 1999, Pullin sued The Vons Companies, Inc. for negligence. Vons answered, and the case was ultimately set for trial. Pullin retained a forensic safety engineer, Ralph Engdahl, and designated Engdahl as his expert on the issue of liability. Vons noticed Engdahl's deposition. Pullin, in turn, telephoned Vons's lawyer to ask for permission for Engdahl to "conduct tests" on the floor at the Inglewood market. Vons's

---

[1]Undesignated section references are to the Code of Civil Procedure.

lawyer responded with a dissertation on Pullin's "failure to timely serve a proper request for an inspection" and refused to allow Engdahl to inspect the premises or conduct any tests.

On February 17, while the Inglewood store was open for business, Engdahl went to the store, examined the spot where Pullin had fallen, used a "small machine" to conduct a test on the floor, purchased an item, then left the store. The entire process took about 15 minutes. No one complained. No one asked him to leave. No damage was done. Based on his test, Engdahl was prepared to testify at trial that, when wet, the "co-efficient of friction on the floor" was below acceptable safety standards, and that the condition of the floor caused Pullin's fall.

Engdahl's deposition was taken the next day, at which time Vons's lawyer learned about Engdahl's test. Shortly thereafter, Vons filed a motion in limine in which it asked for an order excluding Engdahl's testimony and the results of his tests, describing Pullin's conduct as an "outrageous" abuse of the discovery process.[2] In opposition, Pullin said that nothing that Engdahl did was prohibited by any statute or rule, and that the Discovery Act is permissive, not mandatory. The trial court agreed with Vons, suggesting at the hearing on Vons's motion that Vons had the right to be present at all tests conducted by Pullin, describing Pullin's conduct as "secretive," and finding that it was "contrary to the spirit of our discovery laws." At the end of the hearing, the trial court excluded the test and any reference to it by Engdahl.

There followed a petition by Pullin in which he asked us to issue a writ of mandate to compel the trial court to vacate its ruling. We issued an order to show cause, stayed trial, and set the matter for hearing.

### DISCUSSION

█ Pullin contends here, as he did in the trial court, that the Discovery Act is permissive and not exclusive. He says that a demand for inspection is not required where, as here, the premises are open to the public. He claims,

---

[2] In addition, Vons's motion in limine characterized the conduct of Pullin's lawyer as a willful violation of the rules of professional conduct. This is the way Vons put it: "In this instance, the corporate defendant, [Vons], was not only contacted at [Pullin's] counsel's direction, by agents of [Pullin's] counsel, but by silent stealth, it was photographed, measured, examined, and tested." There is nothing in the record to suggest that Engdahl talked to anyone at Vons, or to the floor, or it to him.

in essence, that "discovery" and "investigation" are two different things. Subject to the qualifications discussed below, we agree.

As relevant, section 2031 provides that a "party *may* demand that any other party allow the party making the demand, or someone acting on that party's behalf, to enter on any land or other property that is in the possession, custody, or control of the party on whom the demand is made, and to inspect and to measure, survey, photograph, test, or sample the land or other property, or any designated object or operation on it." (§ 2031, subd. (a)(3), italics added.) In section 2031 as throughout the Discovery Act, "may" is quite obviously permissive. It means that a party who wants to can conduct discovery. If he doesn't want to, he doesn't have to. (*Lowry v. Henry Mayo Newhall Memorial Hospital* (1986) 185 Cal.App.3d 188, 193 [229 Cal.Rptr. 620, 64 A.L.R.4th 1191].)

There is scant authority on the distinction between formal discovery and investigation, with everyone apparently assuming that everyone else knows the difference. (E.g., *500 Motors, Inc. v. Superior Court* (1981) 122 Cal.App.3d 827, 829, fn. 1 [176 Cal.Rptr. 349] [describing a situation where "investigation (not formal discovery) is all that is needed" to find a document relevant to the issue before the court].) Black's Law Dictionary defines "investigate" this way: "To inquire into (a matter) systematically . . . ." "Discovery" is defined as "[c]ompulsory disclosure, at a party's request, of information that relates to the litigation . . . ." (Black's Law Dict. (7th ed. 1999) at pp. 478, 830.)[3]

We need no authority for the proposition that a party's request to the other party for answers to questions (depositions, interrogatories, requests for admissions) must be made in conformance with the Discovery Act. Similarly, it is clear that, in most instances, a party's right to inspect documents or other physical evidence in the possession or custody of the opposing party depends upon compliance with the procedures set out in section 2031. On the other hand, there are situations where documents can be obtained without the other party's cooperation (for example, under the Public Records Act or from a friendly third party or by hiring a trained investigator or on the internet). In the case now before us, the question is whether property open to

---

[3]We do not understand the trial court's criticism of the test as "secretive." All unilateral investigation is by definition conducted outside the presence of the party's adversaries. There is nothing wrong with that. Had Engdahl looked at the floor, identified the flooring material, gone out and purchased a piece, taken it to a laboratory and tested it, no one from Vons would have been present. As Vons's lawyer conceded at oral argument, he could have done just that. Clearly, the issue of "secretiveness" is a red herring.

the public can be examined without recourse to section 2031. Our answer is yes, provided that the examination can be conducted in a lawful fashion.[4]

The Vons store is private property but it is open to the public. According to section 41.24(d) of the Los Angeles Municipal Code, that means the owner may ask anyone who enters to leave the premises if the request is rationally related to the services performed or the services provided. If the person who is asked to leave returns within 24 hours, that person is subject to arrest for a trespass. Since Engdahl was at the store only once and was not asked to leave, he was not a trespasser. (See also Pen. Code, § 602, subds. (k), (l).)[5] Since there is no claim that Engdahl did anything to damage the floor or any part of Vons's property, there was no vandalism or anything of that nature. (Pen. Code, § 594.) Since there is no claim that Engdahl did anything to interfere with Vons's ability to conduct its business or with Vons's customers, there is no violation of Penal Code section 602.1, subdivision (a). There was no loitering. (Pen. Code, § 647, subd. (h).) We do not see any unlawful conduct.

Consider this example: A man and a woman are shopping at a grocery store. There are two pyramids of cans, both dangerously balanced. One falls on the woman, injuring her. The man happens to have a camera in his pocket and takes a picture of the remaining pyramid. If the woman sues the store, who would say that the photograph is inadmissible? No one. It is immaterial that it is not the product of discovery. It is immaterial that no representative of the store saw the man take the photograph. We see no meaningful difference in our case.

Our role is to encourage low-cost investigation, not to adopt rules that foster increased reliance on discovery devices that are too often abused. If one lawyer has a genuine concern about the manner in which another lawyer has conducted a test, or if there is something illegal about an investigator's conduct, those points may be raised by way of an appropriate in limine motion to exclude evidence on whatever ground may be available. All we are saying in this opinion is that evidence is not made inadmissible by the simple fact that it is obtained by investigation rather than by way of formal discovery.

## DISPOSITION

The petition is granted. Let a peremptory writ of mandate issue compelling the trial court to vacate its order excluding Engdahl's testimony about

---

[4]If it is a lawful investigation, it is not "discovery" within the meaning of the Discovery Act, and it is immaterial that the discovery cut-off date may have come and gone.

[5]If Inglewood has a different local ordinance, it has not been called to our attention.

his test. Our stay order is dissolved and a new trial date should be set. Pullin is awarded his costs of these writ proceedings.

Spencer, P. J., and Ortega, J., concurred.

The petition of real party in interest for review by the Supreme Court was denied October 3, 2000.